UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

               - against -                    :

RICARDO MORALES,                            :

                    Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM DECISION**

96 Cr. 317 (DC)

**APPEARANCES:**          AUDREY STRAUSS, Esq.
United States Attorney for the
Southern District of New York
           By:   Alexandra Rothman, Esq.
                 Andrew Thomas, Esq.
                 Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York  10007

ZEMAN & WOMBLE, LLP
Attorneys for Defendant
           By:   Ken Womble, Esq.
20 Vesey Street, Room 400
New York, New York  10007

**CHIN, Circuit Judge:**

On May 1, 1997, defendant Ricardo Morales was convicted of fifteen

counts of racketeering, armed robbery, assault, felony murder, weapons violations, and

conspiracy.  After the Second Circuit reversed Morales's racketeering and racketeering-

related convictions, I resentenced him to 110 years, of imprisonment.  Dkt. No. 130.

Morales now moves to reduce his sentence to pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

For the reasons set out below, the motion is DENIED.

## BACKGROUND

**A.    Morales's Background and Criminal History**

Raised in a single parent household, Morales left home at the age of twelve.  Presentence Investigation Report ("PSR") ¶ 110.  While still a teenager, Morales was convicted of attempted murder, after he shot an employee of a store he was robbing.  *Id.* ¶¶ 93-94.  Morales was incarcerated for much of his teenage and young adult years, earning his General Equivalency Diploma during that time.  *Id.* ¶¶ 98, 120.  Morales was released from prison on May 26, 1995 at the age of 22.  *Id.* ¶ 98.

**B.    The Underlying Offense, Conviction, and Sentencing**

Morales was a member of the Park Avenue Boys along with co-defendants, Angel Diaz and Jesus Mendez.  *Id.* ¶ 35.  Morales's current sentence is based on his involvement in a string of robberies starting in January 1996, that culminated in the murder of a police officer, Kevin Gillespie.  *Id.* ¶¶ 38-43.  On January 3, 1996, Morales, Diaz, and Mendez robbed a grocery store at gunpoint and beat a customer who walked in on the robbery.  *Id.* ¶ 38.  At the second robbery on February 25, 1996, Morales and Mendez robbed a store owner, and Mendez shot the store owner in the back before stealing the contents of his pockets.  *Id.* ¶ 39.  Finally, on March 14, 1996,

Morales, Mendez, and Diaz stole a BMW during an encounter with a man they knew. *Id.* ¶ 40.  With Mendez driving the stolen BMW, they were eventually cornered by police officers, who were responding to a report that the vehicle was stolen.  *Id.* ¶ 42. All three exited the BMW -- Diaz shot and killed Officer Gillespie, Mendez fired shots at two other officers as he was attempting to flee the scene, and Morales, upon realizing his gun had jammed, fled the scene.  *Id.* ¶ 42.

Morales was arrested on March 15, 1996 and indicted on April 29, 1996. *Id.* ¶¶ 1, 98.  Counts One and Two charged Morales with racketeering and conspiring to participate in racketeering in violation of 18 U.S.C. § 1962(c)-(d).  *Id.* ¶¶ 8-9.  Counts Three through Eight raised various Hobbes Act robbery charges.  *Id.* ¶¶ 10-15.  Counts Nine and Ten charged Morales with violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959 -- this included the felony murder charge for the killing of Officer Gillespie.  *Id.* ¶¶ 16-17.  Counts Twelve through Eighteen charged Morales for violations of 18 U.S.C. § 924(c) for using a firearm during the crimes.  *Id.* ¶¶ 19-25. Lastly, Court Twenty charged Morales with possession of a firearm as a convicted felon, in violation of 18 U.S.C. 922(g)(1).[1]  *Id.* ¶ 27.  Following a jury trial, Morales was convicted on fifteen counts of racketeering, armed robbery, assault, felony murder,

---

[1]      Only Mendez was charged with Counts Eleven, Nineteen, and Twenty-One.  PSR ¶¶ 18, 26, 28.

weapons violations, and conspiracy.  *Id.* ¶ 29; Dkt. No. 101 ("Sent'g Tr.") at 2.  He was

acquitted on Counts Three, Four, and Twelve.  Dkt. No. 134.

        The Second Circuit affirmed the Hobbs Act convictions and the firearm

convictions (Counts Five through Eight, Thirteen, Fourteen, and Twenty) but reversed

the racketeering-dependent convictions (Counts One, Two, Nine, Ten, Fifteen through

Nineteen) and remanded for resentencing.  *See United States v. Morales*, 185 F.3d 74, 85

(2d Cir. 1999).  At the second sentencing hearing, I sentenced Morales to 1,320 months

or 110 years of imprisonment, followed by three years of supervised release.  Dkt. No.

130.

### C.    <u>Morales's Motion for Compassionate Release</u>

        On July 17, 2020, Morales filed a motion for compassionate release with

the Warden at FCI Allenwood, which the Warden denied.  *See* Dkt. No. 205 ("Def.

Mem."), Ex. A at 26-27.  Upon receiving the denial, Morales filed a Request for

Administrative Remedy on August 27, 2020.  *See id.*, Ex. B at 28.  The Warden denied the

request on September 28, 2020.  *See id.*, Ex. C at 29.  On October 16, 2020, Morales filed a

*pro se* motion for compassionate release.  Dkt. No. 205.  Morales's counsel supplemented

his motion for compassionate release on January 29, 2021.  Dkt. No. 210 ("Supp. Mem.").

The government opposes.  Dkt. No. 215 ("Opp.").

In his motion, Morales argues that (1) the COVID-19 pandemic; (2) his age (47 years) and health conditions (obesity and hypertension);[2] and (3) his rehabilitations during his time in prison are all extraordinary and compelling reasons that warrant a sentence reduction. *See* Supp. Mem. at 1. Morales also argues that the section 3553(a) factors weigh in favor of granting his compassionate release. *Id.* at 20-22. Morales argues that a "sentence of 30 years is certainly 'sufficient but not greater than necessary' to achieve the ends of justice under § 3553(a)." *Id.* at 21.

Morales, now 48 years old, has been incarcerated for some twenty-five years and has an expected release date in 2090. *See* Supp. Mem. at 3.

## DISCUSSION

### A. Applicable Law

A court "may reduce the [defendant's] term of imprisonment" if, after the defendant has "fully exhausted all administrative rights to appeal," the court "after considering the factors set forth in section 3553(a)" finds that "extraordinary and compelling reasons warrant such a reduction" and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §

---

[2] There are several different medical conditions Morales and his counsel mention. In his *pro se* brief, Morales says he is immunocompromised and has hypertension, PTSD, and a chronic dry cough. *See* Def. Mem. at 6. Morales's counsel says Morales's medical conditions include "obesity, hypertension, and asthma," though his asthma is only mentioned once. *See* Supp. Mem. at 1. Additionally, Morales's counsel states that a recent medical examination revealed "a low white T cell count, which could result in his being immunosuppressed." *Id.* at 6. No medical records have been provided to confirm these conditions.

3582(c)(1)(A).  U.S. Sentencing Guidelines Manual § 1B1.13 lists reasons that qualify as

extraordinary and compelling, but the Second Circuit has held that district courts are

not bound to only those enumerated reasons -- they are, instead, free to "consider the

full slate of extraordinary and compelling reasons that an imprisoned person might

bring before them in motions for compassionate release."  *United States v. Brooker*, 976

F.3d 228, 237 (2d Cir. 2020).  While a district court has broad discretion to determine

whether extraordinary and compelling reasons exist, "[r]ehabilitation . . . alone shall not

be considered an extraordinary and compelling reason" to grant release.  28 U.S.C. §

994(t); *see also Brooker*, 976 F3d at 237-38 (concluding that defendant did not rely solely

on his rehabilitation when he also argued that "his age at the time of his crime and the

sentencing court's statements about the injustice of his lengthy sentence" might favor

sentence reduction).

    If a defendant qualifies for a reduction, the court must decide whether to

grant the reduction by weighing the factors set forth in section 3553(a), to the extent

they are applicable.  *See United States v. Israel*, No. 05 CR 1039 (CM), 2019 WL 6702522, at

*2 (S.D.N.Y. Dec. 9, 2019).  These include: the nature and circumstances of the offense;

the defendant's history and characteristics; the need for the sentence to reflect the

seriousness of the offense, to promote respect for the law, to provide just punishment

for the offense, to afford adequate deterrence to criminal conduct, and to provide the

defendant with needed medical care; and the need to avoid unwarranted disparities in sentences.  *See* 18 U.S.C. § 3553(a).

On a motion for compassionate release, the defendant bears the burden of showing that a reduction is warranted.  *See Patterson*, 2020 WL 2571044, at *2.

## B.    **Application**

As a threshold matter, Morales has exhausted his administrative remedies, as the Warden denied his request for release twice.  *See* Def. Mem., Exs. A & C; *see also United States v. Newkirk*, 18 Cr. 699 (CM), 2020 WL 7260739, at *2 (S.D.N.Y. Dec. 10, 2020) (submitting request for release from the Warden and receiving a denial was sufficient exhaustion of administrative remedies).

First, I consider whether Morales is eligible for compassionate release under section 3582(c)(1)(A), that is, whether he has demonstrated extraordinary and compelling reasons warranting a sentence reduction.  I conclude that he has.  Second, I consider whether to grant the motion by weighing the factors set forth in section 3553(a), to the extent they are applicable.  I conclude that the statutory factors do not weigh in favor of granting the motion.

### 1.    **Extraordinary and Compelling Reasons**

Morales suffers from hypertension and is obese, with a body mass index of 31.  Supp. Mem. at 5-6.  Both conditions "can make [him] more likely to get severely ill from COVID-19."  *COVID-19:  People with Certain Medical Conditions*, Centers for

Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021).[3] The government does not dispute this.  Opp. at 5.  Courts in this district have found extraordinary and compelling reasons for individuals suffering from comparable health conditions.  *See, e.g., United States v. Vargas*, No. 88-CR-325 (VEC), 2020 WL 6886646 (S.D.N.Y. Nov. 24, 2020) (granting release to defendant with hypertension and obesity); *United States v. Franco*, No. 12-CR-932, 2020 WL 4344834, at *3 (S.D.N.Y. June 24, 2020) (agreeing with other courts in finding that 41-year-old defendant with hypertension, obesity, and diabetes demonstrated extraordinary and compelling reasons justifying release during COVID-19 pandemic); *United States v. Salvagno*, 456 F. Supp. 3d 420, 427–28 (N.D.N.Y. 2020) (finding heightened risk of severe illness if defendant were to contract COVID-19 due to defendant's hypertension constitutes extraordinary and compelling reason for his release); *United States v. Zukerman*, 451 F. Supp. 3d 329, 334–35 (S.D.N.Y. 2020) (granting compassionate release for older defendant with hypertension, obesity, and diabetes).[4]  Accordingly, Morales has demonstrated extraordinary and compelling reasons based on his health conditions.

---

[3]     On February 20, 2021, the BOP offered Morales the COVID-19 vaccine.  Morales refused the vaccine on March 25, 2021.  Opp. at 3.  On March 25, 2021, Morales reconsidered his refusal and requested the vaccine.  *Id.*

[4]     Morales additionally cites his efforts to the generally onerous conditions of confinement and his rehabilitative efforts.  *See* Supp. Mem. at 16-18.  However, these factors do not weigh in favor of finding extraordinary and compelling reasons meriting compassionate release.  *See United States v. Nwankwo*, No. 12 CR 31 (VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020), *reconsideration denied*, No. 12 CR 31 (VM), 2020 WL 2576145 (S.D.N.Y. May 21, 2020) ("[W]hile the COVID-19 pandemic is undoubtedly serious and

2.      **Section 3553(a) Factors**

Although Morales has established extraordinary and compelling reasons, I conclude that the section 3553(a) factors weigh against granting compassionate release.

First, "the nature and circumstances" of Morales's offense weigh against a sentence reduction.  18 U.S.C. § 3553(a)(1).  Morales was involved in a string of robberies, which culminated in the murder of a police officer.  PSR ¶¶ 35-43.  As I noted at Morales's first sentencing, though he might not have pulled the trigger to kill Officer Gillespie, Morales "knew, when they carjacked the BMW and went on their crime spree . . . that someone could be hurt or that someone could or would be killed."  Sent'g Tr. at 32.  Indeed, Morales wielded a gun during the robberies.  In addition to Officer Gillespie's death, these violent robberies resulted in serious physical and psychological injuries to others and their families.  PSR ¶¶ 38-39, 47-53.  I said at his first sentencing, "a sentence of life imprisonment is clearly justified" in Morales's case.  Sent'g Tr. 32.  Given the violent nature of these crimes, reducing Morales's sentence from 110 years to 25 years would not "reflect the seriousness of the offense" nor would it provide "just punishment."  18 U.S.C. § 3553(a)(2)(A).

---

of great concern, numerous courts have found that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease.")

Morales cites to several cases in which a defendant's life sentence for convictions involving murder was reduced to time served.  *See* Supp. Mem. at 21-22 (citing *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. Sept. 30, 2020); *United States v. Rios*, No. 94 Cr. 112 (JBA), 2020 WL 7246440 (D. Conn. Dec. 8, 2020); *United Sates v. Fisher*, No. 83 Cr. 150 (PAC), 2020 WL 5992340 (S.D.N.Y. Oct. 9, 2020)).  While the defendants in those cases committed similar crimes to Morales and suffer from similar health conditions, there are notable distinctions.  For example, the court in *Rodriguez* noted that it "has never before received on behalf of an incarcerated defendant such glowing letters written by [twenty-seven] prison staff[ers] from the institutions where the defendant has been incarcerated."  *Rodriguez*, 492 F. Supp. 3d at 311.  Other cases are distinguishable based on the defendants' ages.  *See Fisher*, 2020 WL 5992340, at *1 (granting reduced sentence for a 73-year-old defendant who had served 38 years of his life sentence).   While a "life sentence is a substantial, but not impossible, hurdle for [a defendant] to overcome" in seeking a sentence reduction, *Rios*, 2020 WL 7246440, at *5, in this case, Morales's life sentence, which reflects the severity of his crimes, is a substantial hurdle that I find he has not overcome.

Second, the "history and characteristics of the defendant" weigh against Morales's release.  18 U.S.C. § 3553(a)(1).  Morales's conduct here was not an aberration, but instead part of a pattern of violent and brazen behavior, starting at an early age.  PSR ¶¶ 93-98.  Morales's patterns continued in prison.  *See* Supp. Mem., at 17 & Ex. A.

It was not until Morales was well into his thirties, and after a transfer to FCI Allenwood, that his misconduct in prison stopped. *Id.* at 17.  Morales notes that "he is at the doorstep of 50, where recidivism rates decline substantially."  *Id.* at 20.  Though Morales's conduct over the last few years is laudable, I am unconvinced that the past ten years outweigh decades of conduct that reflected a pattern of violent behavior and flagrant disregard for the law.

Granting Morales's motion would mean releasing him from his one hundred ten-year sentence after only twenty five years in prison.  I conclude that such a sentence reduction would not be a just sentence, given the seriousness of Morales's crimes.  Further, I am not persuaded that Morales no longer presents a threat to the public.

## CONCLUSION

Morales's motion for compassionate release is hereby DENIED.

SO ORDERED.

Dated:       New York, New York
                   July 20, 2021


                                              ____/s/DC_____
                                              DENNY CHIN
                                              United States Circuit Judge
                                              Sitting by Designation

11